**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MELISSA ZIRBEL, as next friend and parent of CSZ, a minor, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| WILMINGTON SCHOOL DISTRICT 209U; DR. MATT SWICK, ADAM SPICER, BRIAN GOFF, CHRISTY ZILLER, and VENITA DENNIS, | ) ) ) ) ) | Jury Demanded |
| Defendants. | ) ) | |

## COMPLAINT

Melissa Zirbel, as next friend and parent of her son CSZ, a minor ("Plaintiff"), by his attorneys, and for his Complaint against Defendants Wilmington School District 209U, Dr. Matt Swick, Adam Spicer, Brian Goff, Christy Ziller, and Venita Dennis (collectively, "Defendants"), allege as follows:

## INTRODUCTION

1.       This civil rights action arises out of the Defendants' consistent and deliberate indifference to the racial harassment and abuse that CSZ suffered since enrolling at school in Wilmington School District 209U (the "District") as an elementary school student in 2013.  CSZ is one of only a very few minority or biracial students in an overwhelmingly Caucasian student body.  The District's teachers, staff, and administrators are exclusively Caucasian.

2.       Throughout elementary school and middle school in the District, other students have ridiculed, harassed, tormented, and physically attacked CSZ because of his African-American heritage.  They regularly called him racial slurs and made derogatory racial comments directed at

him. They have repeatedly threatened CSZ with violence and, at times, they have engaged in actual violence against CSZ. These incidents took place in school, on school grounds, or sometimes on the way home from school. When these incidents occurred, CSZ and his mother notified Defendants that CSZ was being harassed because of or about his race and asked them to take actions to address it and prevent it from happening again. Defendants have consistently failed to respond and intervene to protect CSZ. In many instances, school administrators blamed CSZ for the harassment he suffered from other students.

3.      Melissa Zirbel, Plaintiff's mother, filed a complaint with the U.S. Department of Education Office of Civil Rights ("OCR"). The OCR placed District 209U under a mandatory plan for complying with Title VI and Defendants agreed to resolve the complaint by teaching diversity sensitivity to the student body. However, Defendants' actions have been inadequate to arrest or reverse the emotional, psychological, and educational harm CSZ has suffered as the direct result of Defendants' deliberate indifference to the racial harassment that he faced. As one example, the District appointed one of the Defendants, Ms. Dennis, to serve as the bullying liaison as part of the OCR mandatory plan, even after Ms. Dennis failed to take action to prevent bullying of CSZ when she was Principal of his elementary school.

4.      Because of the ongoing harassment and abuse, CSZ transferred to an alternative school outside of the District, where he completed eighth grade. He was slated to attend Wilmington High School ("WHS") next year, where he would have regularly had to face the students who have racially harassed him since he enrolled in the District. Ms. Zirbel and CSZ are in the process of moving to another school district at significant expense because of the District's failure to take action to prevent the racial harassment, abuse, and physical violence CSZ faced in the District.

2

5.      CSZ brings this action against Defendants under Title VI of the Civil Rights Act of 1964, the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution, and Illinois law.  As detailed below, Defendants' deliberate indifference to the racial harassment that CSZ suffered, and the ongoing harassment he would have continued to suffer if he attended WHS, deprived him of his right to an education.  Defendants have failed to take reasonable measures to protect CSZ from students who harassed him, including but not limited to failing to appropriately discipline perpetrators; failing to appropriately train students, teachers, staff, and administrators on diversity sensitivity; and ignoring or minimizing the seriousness of the verbal and physical attacks against CSZ.  Instead, Defendants blamed and scapegoated CSZ for other students' harassing behavior.  CSZ seeks compensatory and punitive damages for the physical, emotional, and educational harm resulting from Defendants' wrongdoing.  CSZ also seeks reimbursement of moving expenses that resulted directly from the District's inability to provide CSZ an academic environment free from racial hostility.

## PARTIES, JURISDICTION, AND VENUE

6.      Plaintiff CSZ is a bi-racial, African-American and Caucasian male.  Melissa Zirbel is the mother of CSZ, a minor.  She brings this action as CSZ's parent and next friend.  At all times relevant to this Complaint, CSZ resided with his mother in Wilmington, Illinois, located in Will County, and attended schools in District 209U.

7.      Defendant Wilmington School District 209U is a unit of local government that operates public schools in Will County, Illinois, including L.J. Stevens Elementary School ("Stevens") and Wilmington Middle School ("WMS").  At all times relevant to this Complaint, District 209U received federal financial assistance and instituted programs and activities receiving federal assistance.

8.      At all times relevant to this Complaint, all of the administrators, teachers, and staff of District 209U were Caucasian.

9.      Defendant Dr. Matt Swick was employed as the Superintendent of Schools for District 209U at all times relevant to this Complaint.

10.      Defendant Adam Spicer was employed as the Principal of WMS at all times relevant to this Complaint.

11.      Defendant Brian Goff was employed as the Assistant Principal of WMS at all times relevant to this Complaint.

12.      Defendant Christy Ziller was employed as a sixth and seventh-grade teacher at WMS at all times relevant to this Complaint.  CSZ was a student in her home room class for Language Arts and other core subjects in sixth and seventh grades.

13.      Defendant Venita Dennis was employed as the Principal of Stevens at all times relevant to this Complaint.

14.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

15.      Venue in this district is proper pursuant to 28 U.S.C. § 1391 because the underlying events giving rise to Plaintiff's claims occurred within the boundaries of the United States District Court for the Northern District of Illinois, and, on information and belief, all parties reside within these boundaries.

## FACTS APPLICABLE TO ALL COUNTS

### *Second and Third Grades*

16.      In the fall of 2013, CSZ began attending Stevens as a third-grade student.

17.      District 209U students began calling CSZ racially derogatory names and making racially derogatory comments to him in the third grade.  Ms. Zirbel reported an incident to Michael

Merit, then-principal of Stevens. Mr. Merit refused to investigate, and the racial verbal abuse of CSZ continued.

### *Fourth Grade*

18.     In the spring of 2015, CSZ was in the fourth grade at Stevens.

19.     In approximately March or April 2015, a Caucasian student by the name of CP began to utter racial slurs to CSZ in school and on the way home from school. In the gym before school, during classes, and in the school cafeteria at lunchtime, CP repeatedly called CSZ the "n-word," called him a derogatory word for a Mexican person, told him to "go back across the border" and "back across the river where he came from," and said his sister and his mom's boyfriend told him to say these things to CSZ. In several related incidents over a period of several school days, CP called CSZ these and other derogatory names. This harassment was overheard by many other students.

20.     On one occasion in the school gym, CP also punched CSZ multiple times.

21.     On the first occasion that CP's racial name-calling began, CSZ approached Ms. Dennis, who was on lunch duty in the cafeteria. CSZ told Ms. Dennis about the racial name-calling that was then taking place. Her response was, "just go sit down." Later on during the same day, after the racial name calling did not stop, CSZ also went to Ms. Dennis's office and told her about it again. Ms. Dennis gave CSZ a similar verbal response, and she did nothing.

22.     Thereafter, CP and other students continued to call CSZ the "n-word" in school.

23.     Over the course of the next several days, CSZ told Ms. Dennis six or seven different times that CP was calling him the "n-word." Always, Ms. Dennis did nothing. Because she did not do anything to stop the racial harassment, CSZ gave up and stopped telling her.

24.     During the same period, Ms. Zirbel made several telephone calls to Ms. Dennis and specifically addressed with her the fact that CP and other students were calling her son the "n-word."  Ms. Dennis took no action in response to Ms. Zirbel's calls.  Ms. Dennis refused to investigate this and other incidents of student racial harassment of CSZ.

25.     Despite CSZ's pleas for help, Ms. Dennis and Stevens took no action to intervene and stop the racial harassment.  On information and belief, Ms. Dennis never talked to CP or contacted CP's parents about CP's racial harassment of CSZ.

26.     On information and belief, District 209U did not take any disciplinary action against CP in response to the scores of times he had racially bullied, harassed, and physically attacked CSZ.

27.     Because Stevens and District 209U did nothing significant to discourage the racial harassment of CSZ, District students continued to call CSZ racially derogatory names in subsequent grades.

### *Fifth Grade*

28.     During the 2015-16 school year, CSZ was in the fifth grade at Stevens.

29.     Beginning in the fifth grade and continuing through the seventh grade, a student by the name of CT called CSZ the "n-word."  CT never stopped calling CSZ the "n-word" while he was enrolled in the District.  Other students, including BS and JL, have heard CT call CSZ the "n-word."  CT has also admitted in writing that he has called CSZ the "n-word."  Ms. Zirbel has shared evidence of this admission with Defendants.

30.     The first incident of racial name-calling by CT took place in fifth grade at lunchtime in the school cafeteria.  On that day, CT called CSZ the "n-word" continuously throughout the lunch period.

31.     When CT began calling CSZ the "n-word," CSZ made a report to Ms. Dennis. Ms. Dennis only talked to CT.  Neither Ms. Dennis nor Stevens disciplined CT in any way.

32.     Consequently, even after Ms. Dennis talked to CT, CT continued to call CSZ the "n-word."

33.     Ms. Zirbel repeatedly contacted Ms. Dennis about CT calling CSZ the "n-word." Ms. Dennis did not investigate and did not take action to stop the harassment. On information and belief, Ms. Dennis never contacted CT's parents about CT's racial harassment of CSZ.

34.     On information and belief, Ms. Dennis never initiated diversity sensitivity education and training for Stevens's students, teachers, administrators, and staff.

35.     CSZ and other students have also heard CT call other biracial (African-American and Caucasian) students the "n-word," including KHH, a classmate of CSZ's.  On information and belief, this fact has been brought to the attention of teachers and school administrators at Stevens and District 209U.

36.     However, on information and belief, Stevens and District 209U has never disciplined CT for his use of racial slurs.

37.     On one occasion, CT and some of his family members chased CSZ home from school with a baseball bat.

38.     Ms. Zirbel reported this incident to Ms. Dennis.  Ms. Dennis did not investigate and told Ms. Zirbel that it was not the District's responsibility to ensure CSZ would not be followed home from school again.

39.     As a result of Ms. Dennis's and other District officials' failure to respond or adequately respond to harassment, CT and other students have continued to direct racial slurs at CSZ through the present.

40. Because of District 209U's inaction, students' racial harassment of CSZ grew worse in middle school.

### *Sixth Grade*

<u>TC Incident</u>

41. In the fall of 2016, CSZ was in the sixth grade at WMS.

42. During Mr. Hanlon's art class in approximately November or December 2016, a student by the name of TC told CSZ that CSZ was "ugly" and that "if it was not for Obama, you would not be here." The comment was overheard by TC's friends and other students. TC also repeatedly called CSZ derogatory names during Social Studies class.

43. CSZ immediately told Mr. Goff, the Assistant Principal, about this incident. Mr. Goff did not address TC's comments toward CSZ with TC or her parents. Instead, Mr. Goff scolded CSZ for his verbal defense to TC's comments.

44. Ms. Zirbel contacted and spoke with Mr. Goff. Ms. Zirbel told Mr. Goff that TC's comment about CSZ's race was inappropriate, and she requested diversity sensitivity training for WMS students.

45. Mr. Goff told Ms. Zirbel that Defendants chose to not punish TC because TC had come home crying after the incident with CSZ.

46. Mr. Goff told Ms. Zirbel that the racist comments that CSZ reported TC made to him were "a he-said-she-said" and that Mr. Goff "cannot tell parents how to raise their children."

47. WMS and District 209U did not censure or discipline TC for making racist comments to CSZ, nor did they do anything to discourage such comments.

<u>CP Incident</u>

48.     On or about March 1, 2017, during Ms. Enz's sixth-grade math class, a student by the name of CP initiated a conversation with CSZ in which she told him, "when you are older, you will be sitting in jail like the rest of your people."

49.     CSZ immediately reported the comment to Mr. Goff.

50.     Ms. Zirbel spoke with Mr. Goff about this incident shortly after it happened.  Mr. Goff's response to Ms. Zirbel was, "It's a 'he-said-she-said,' his word against her word, so we can't do anything.  And we can't tell parents how to raise their kids."  Mr. Goff did not contact CP's parents to tell them about their daughter's racial harassment of CSZ.

51.     Neither Mr. Goff, WMS, nor District 209U disciplined CP in any way for her racist remark to CSZ.  District 209U punished CSZ for his verbal defense to CP's racist comment.

<u>JL Incidents</u>

52.     A sixth-grade student by the name of JL called CSZ the "n-word" almost every day throughout sixth grade.

53.     CSZ reported these slurs to administration officials until it became clear to him that school officials were not willing to take any significant action in response to his complaints.

54.     As one example of JL's racist behavior, in or about early April 2017, CSZ was eating lunch at a table with several other kids in the school cafeteria.  At this time, JL repeatedly called CSZ the "n-word," told him he was "gay," and threatened to choke CSZ with his penis.  Other students, including BS and HH, were present and heard the comments.  One student has admitted in writing that JL called CSZ the "n-word."  Ms. Zirbel has shared evidence of this admission with Defendants.

55.     In an effort to prove that the harassment was recurring and as a deterrent, CSZ began to take video and audio with his phone of JL calling him the "n-word."

56.     The school janitor then overheard JL shouting about CSZ taking video of him. CSZ had a broken leg in a cast at the time. The janitor physically grabbed CSZ by the arm, lifted him out of his lunch chair, pulled him out of the cafeteria, and dragged him to the principal's office.

57.     CSZ told the janitor that JL was making deeply offensive racist and violent comments to him, but the janitor ignored CSZ. The janitor told Mr. Spicer, Principal of WMS, that CSZ was recording video and being inappropriate. In her account to the principal, the janitor ignored the racial slurs, homophobic slurs, and the threats of violence that CSZ had reported to her.

58.     While at the office, CSZ also repeated to Mr. Spicer and Mr. Goff the names and comments JL directed at him.

59.     Ms. Zirbel also contacted and talked to Mr. Goff about the incident and the things JL had said to CSZ. Mr. Goff's response to Ms. Zirbel was that JL has a behavioral problem.

60.     Mr. Goff's solution to JL's racist comments was for CSZ to leave class and school early in order to avoid JL.

61.     This "solution" placed the burden and the cost (in the form of lost classroom time) of solving the problem of racial harassment on the victim, CSZ, when it was District 209U's responsibility to adopt measures to protect CSZ from racial harassment and create a safe environment in which he could learn.

62.     At her initiative, Ms. Zirbel met with Superintendent Matt Swick in person about this incident. Dr. Swick took no action following this meeting to address the racial harassment CSZ faced in school.

63.     Ms. Zirbel also reported the incident and discussed it with Dr. Kevin Feeney, Principal of Wilmington High School at the time.  Dr. Feeney's response was to focus on the janitor's account and to ignore the fact that JL had directed racially derogatory comments and violent threats against CSZ.

64.     Neither Dr. Spicer, Mr. Goff, WMS, nor District 209U disciplined JL in any fashion for the racist and violent comments he directed at CSZ.

65.     Nor did WMS or District 209U seek to educate JL or other students on issues of racial diversity.

<u>MJ Incident</u>

66.     In approximately April or May 2017, during Mr. Geiss' "shop class," a Caucasian sixth-grade student, MJ, told CSZ, "in different times, you would be my slave, and I would be your master, whipping the shit out of you."

67.     Other students, including KHH, overheard the comment.  KHH was another biracial (African-American and Caucasian) student at District 209U.

68.     At the same time that MJ made his comment to CSZ, MJ told KHH, "You'd be in the back of the bus in different times."

69.     After MJ made these comments, CSZ and KHH went to the Principal's office together to report MJ's comments.  They reported the comments to both Mr. Goff and Dr. Spicer.

70.     CSZ also reported the incident to the school counselor, Jack Skole.

71.     Two or three days following the incident, Mr. Spicer and Mr. Goff placed MJ and CSZ in the same room in order for CSZ to have the opportunity to tell MJ why what MJ said was hurtful.

72.     This approach to problem solving put the administrative burden and the emotional cost on CSZ, the affected student, causing CSZ pain in the process, and failed to address District 209U's underlying problem of racial bias among students.  To date, on information and belief, this approach has been the District's only strategy for addressing racially biased students.  It was painful for CSZ, who does not want to repeat it.

73.     As a result of District 209U's ineffectual and unreasonable response to racial harassment of CSZ, MJ continued to call CSZ racist names in both the sixth and seventh grades.

### BS Incident

74.     Over the course of two days, a Caucasian sixth-grade student by the name of BS called CSZ the "n-word" repeatedly in the school cafeteria during the lunch period.  Other students, including CT and JL, were also present and heard it.  BS has also admitted in writing that he called CSZ the "n-word."

75.     CSZ immediately went to Mr. Goff and reported the incidents to him.

76.     Ms. Zirbel also reported to Mr. Goff that BS had repeatedly called CSZ the "n-word."  Mr. Goff's response was, "it's a he-said-she-said, so we can't do anything, and we can't tell parents how to raise their kids."  Mr. Goff did not contact BS's parents to inform them that BS had called CSZ racist names.

77.     On information and belief, neither Mr. Goff, nor Mr. Spicer, nor WMS, nor District 209U disciplined BS for calling CSZ the "n-word" repeatedly.

78.     Nor did they institute any diversity sensitivity training for District 209U students, teachers, or administrators.

79.     Consequently, the racial harassment of CSZ in school continued until it was intolerable for him and his mother.

80. Near the end of CSZ's sixth-grade year, in or about May 2017, after more than two years of complaints to but no action or changes by District 209U, Ms. Zirbel filed a formal complaint with the U.S. Department of Education's Office of Civil Rights ("OCR") regarding the District's failure to address the constant and widespread racial harassment of CSZ.

81. Nevertheless, District 209U's failure to protect CSZ from racial harassment continued even in the face of the pending OCR complaint.

### *7th Grade*

82. In the fall of 2017, CSZ was in the seventh grade at WMS.

<u>MC Incident</u>

83. On October 22, 2017, in Ms. Ziller's WMS classroom, a Caucasian seventh-grade student, MC, told CSZ that CSZ annoyed MC and that MC was going to hit CSZ. MC had previously called CSZ the "n-word" and she had been calling CSZ "gay" since the third grade. On those previous occasions, CSZ had told Ms. Dennis about the incidents; however, Ms. Dennis did nothing to address or prevent MC's racial harassment of CSZ.

84. On October 22, 2017, MC hit CSZ with a book two or three times.

85. To defend himself, CSZ knocked the book out of MC's hands and to the floor.

86. Ms. Ziller placed the blame on CSZ for the entire incident. Ms. Ziller ignored MC's initiating aggression and the racial bias against CSZ that motivated CSZ's action.

87. On another occasion, after MC had called CSZ "gay," Ms. Ziller ignored MC's discriminatory comment and said, "I know he [CSZ] is a snitch."

88. Ms. Ziller never took any action on any of CSZ's complaints that MC was directing racial slurs at CSZ and that she was the instigator in the interpersonal conflicts. Ms. Ziller blamed

CSZ for any negative behavior in CSZ's interactions with MC, ignoring the underlying racial harassment and aggression expressed by MC.

89. Neither Ms. Ziller, nor Mr. Spicer, nor Mr. Goff, nor District 209U ever took any action to discipline MC for her behavior in October 2017 or for her racist comments toward CSZ over the years.

90. Ms. Ziller also made the harassment of CSZ worse by seating him with several of the students who (as he told her) were singling him out for racial aggression, including AM, AB, CP, EC, GO, HD, JS, MC, MM, and NY.

91. As a result of Ms. Ziller's actions, CSZ was unable to concentrate in class, and thus fully participate in his education, due to the consistent racial harassment.

<u>HD Incidents</u>

92. At WMS, in or about November 2017, a seventh grader by the name of HD told CSZ that CSZ's questions and comments in class did not matter and that anything he said "should not be brought on this earth."

93. On this and previous dates, HD made racially derogatory statements to CSZ, saying things like "your kind are ugly, retarded, and stupid."

<u>HH and MJ Incidents</u>

94. On December 1, 2017 in the hallway, a seventh grader by the name of HH delivered a message to CSZ from another seventh grader, MJ, who had been in Ms. Hansen's Social Studies class with CSZ earlier in the day. The message was that "[MJ] is happy that his family owned your family back in the day." Other students heard the comment, including MCM.

95. Another seventh grader, MC, overheard the comment delivered by HH in the hallway.

14

96.     In or about December 2017, on another day in Social Studies class, on an occasion when the lights were out in the classroom, MJ said, "Where's [CSZ]?  You can't see him because he's dark," and you can only see his "flashing pair of teeth."

97.     CSZ told Mr. Goff about these comments.  District administrators took no action to discipline or educate HH, MJ, or any other District 209U students in response to this harassment.

NG Incident

98.     On December 11, 2017, at breakfast in the school cafeteria, a sixth grader by the name of NG called CSZ the "n-word" multiple times.  Several other students were present and heard it, including DD, CS, and AM.

99.     On other occasions, NG, DD, CS, and AM bullied and isolated CSZ in classes, including in gym class.

Other Incidents

100.     The incidents included and described above are illustrative, not exhaustive, of the pattern of ongoing racial, verbal, and physical abuse and inaction by the District that CSZ has suffered since the third grade as a student in District 209U, and continued the start of his eighth grade year.

101.     The harassment of CSZ by his fellow students took place not only during the school day on school property, but also on social media.  CSZ and Ms. Zirbel provided screenshots of online harassment to the District, but the District failed to take any action to prevent future and ongoing racial abuse online.

***Eighth Grade and CSZ's Decision to Transfer and Move***

102.     When CSZ started seventh grade, he began to tell Ms. Zirbel that he wanted to switch schools.  CSZ and Ms. Zirbel also told Mr. Skole that CSZ wanted to switch schools.

15

103.    In or around December 2017, CSZ and Ms. Zirbel met with Dr. Feeney, Dr. Swick, and Mr. Spicer to discuss the possibility of CSZ switching schools.

104.    Dr. Feeney, Dr. Swick, and Mr. Spicer told CSZ and Ms. Zirbel only that "There are rules and you can't just switch. It will cost you."

105.    Dr. Feeney, Dr. Swick, and Mr. Spicer refused to tell CSZ and Ms. Zirbel how much it would cost to switch schools.

106.    After the meeting, CSZ and Ms. Zirbel continued to express to Defendants that CSZ wanted to switch schools.

107.    In or about November of 2018, multiple students call CSZ the "n-word" and referred to him as a slave. Thereafter, CSZ stated that he would not return to WMS because the District had failed to prevent the ongoing harassment.

108.    In or about November of 2018, Mr. Spicer offered CSZ the option to go to Lincoln, an alternative school. CSZ and Ms. Zirbel visited Lincoln. CSZ felt safer at Lincoln than he did at WMS. CSZ transferred to Lincoln shortly thereafter.

109.    In or around June 2018, Ms. Zirbel and CSZ decided to move outside Wilmington School District so that CSZ could attend a school that would provide an educational environment free from racial harassment, abuse, and physical violence.

### *Defendants' Inaction Injured CSZ*

110.    Despite complaints by CSZ and other minority students of discrimination by Caucasian students in a predominantly Caucasian school, the District has failed to undertake adequate action to provide an environment free from harassment, including diversity sensitivity education and training for students and adequate disciplinary action.

111.     District 209U's administrators failed to implement any diversity sensitivity education and training for teachers, staff, or administrators, whose job it is to respond to incidents of racial harassment and complaints.

112.     District 209U has been made aware of the need for diversity sensitivity education and training for students, teachers, staff, and administrators through the complaints of racially motivated harassment over the period of the last several years.  Yet it has failed to take actions to implement such education and training.

113.     Ms. Zirbel repeatedly and directly requested that District 209U officials undertake diversity and sensitivity education for students, teachers, staff, and administrators.

114.     Over the last four years, Ms. Zirbel made this request orally at meetings with administrators.  She did so at a meeting in March or April 2017 after pointing out that school officials were doing nothing to address the racial harassment of CSZ.  Ms. Zirbel specifically told administrators that they were not focusing on the underlying issue of the lack of sensitivity to minority students.

115.     The issue of the need for diversity and sensitivity education and training was also discussed at District 209U meetings of school principals.  However, throughout the time that CSZ and other minority students were struggling with racial harassment from their peers, the District failed to implement any such education and training.

116.     The District completely failed to implement diversity sensitivity education and training until very recently when OCR directed it to do so, in the wake of Ms. Zirbel's complaint. Per OCR, the very first such trainings, for staff and for students, were to have been completed by May 15, 2018.  On information and belief, the District still has not implement a plan for any diversity education for students.

117. CSZ was harmed because the District failed to undertake effective or timely diversity and sensitivity training.

118. Although the District occasionally disciplined students in limited circumstances, this disciplinary response was inadequate because it did not deter other students, and had no effect on the level of harassment and abuse suffered by CSZ.

119. The District was aware that its minimal discipline of other students was inadequate because the harassment of CSZ continued.

120. CSZ was harmed because the District failed to adequately take disciplinary or other action to prevent further harassment and abuse.

### CSZ Has Been Psychologically Traumatized and Deprived of an Equal Education as a Result of Defendants' Actions and Inactions

121. As the direct result of Defendants' actions and inactions in failing to protect CSZ from racial harassment in the District, CSZ suffered serious emotional, psychological, and educational harm in the second through eighth grades. This was a crucial period for CSZ's emotional, social, and academic development.

122. CSZ's teachers and others believe he is an unusually bright child, but under the pressure of the racial bullying during his formative years, CSZ's grades declined. His standardized test scores declined. The constant bullying made it difficult for him to concentrate on and maintain his in-school work, homework, grades, and test scores. During this period, CSZ did not want to go to school.

123. As a result of District 209U's inaction over years in failing to protect CSZ from racially motivated harassment, CSZ feels isolated in school.

124. As a result of District 209U's inaction over years in failing to protect CSZ from racially motivated harassment, CSZ feels isolated from his mother, Ms. Zirbel, because despite her

numerous complaints to Defendants, Defendants' inaction has made Ms. Zirbel's efforts appear fruitless. The situation has put a strain on their relationship.

125. Both in school and out of school, CSZ has required ongoing psychological care and counseling in order to deal with the psychological harm caused by the students' racial harassment and Defendants' failure to act.

126. Ms. Zirbel and CSZ were forced to move because of the District's failure to take action to prevent the racial harassment, abuse, and physical violence CSZ faced in the District. Ms. Zirbel is currently in the process of seeking a school where CSZ will be able to receive an education free from racial harassment. Ms. Zirbel has borrowed significant funds in order to move, as a direct result of CSZ's grievances against the District.

## COUNT I
## VIOLATION OF TITLE VI OF THE
## CIVIL RIGHTS ACT OF 1964 AGAINST DISTRICT 209U

127. Plaintiff incorporates paragraphs 1 – 126 by reference.

128. District 209U was callously, recklessly, and deliberately indifferent to known physical and verbal racial abuse that was severe, pervasive, and objectively offensive. While District 209U was aware of the abuse and had authority to end it, it failed to do so.

129. District 209U's actions were clearly unreasonable under the circumstances.

130. District 209U's wrongdoing was in reckless disregard of District 209U's obligations to protect CSZ's federal rights.

131. As a result of District 209U's wrongdoing, CSZ was deprived of access to educational opportunities and benefits provided by District 209U.

132. As a result of District 209U's callous, reckless, and deliberate indifference, CSZ sustained damages, including but not limited to pain and suffering, emotional distress, medical expenses, and moving expenses.

**COUNT II**
**RETALIATION UNDER TITLE VI OF THE**
**CIVIL RIGHTS ACT OF 1964 AGAINST DISTRICT 209U**

133.     Plaintiff incorporates paragraphs 1-132 by reference.

134.     Plaintiff engaged in statutorily protected activity when they complained to District 209U and government officials about the racial harassment, threats of violence, actual violence, and fear of further threats to CSZ's psychological and physical safety and well-being that he experienced as a District 209U student.

135.     As a result of Plaintiff's statutorily protected activities, District 209U took adverse actions against CSZ, including disciplining and threatening to discipline him instead of the perpetrators of racial harassment; grouping him with the perpetrators of racial harassment during school-sanctioned activities, which made it even harder for CSZ to concentrate and learn; and making CSZ (rather than the school and the perpetrators) bear the burden and cost of unreasonable and ineffective attempts to remedy the racial harassment he experienced, which further deprived him of access to educational opportunities and benefits provided by District 209U.

136.     By the actions set forth above, District 209U retaliated against CSZ because Plaintiff complained about the racial harassment and abuse CSZ was experiencing.  Had Plaintiff not engaged in protected activity, District 209U would not have taken these adverse actions.

137.     By retaliating against CSZ, District 209U made CSZ feel unwelcome as a student within District 209U.

138.     As a result of District 209U's retaliation, CSZ sustained significant damages, including pain and suffering, emotional distress, medical expenses, and moving expenses.

**COUNT III**
**VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE**
**U.S. CONSTITUTION AGAINST DISTRICT 209U AND AGAINST SWICK, SPICER,**
**GOFF, ZILLER, AND DENNIS IN THEIR INDIVIDUAL CAPACITIES**

139.  Plaintiff incorporates paragraphs 1 – 138 by reference.

140.  The Equal Protection Clause of the Fourteenth Amendment grants to all persons the right to be free from invidious discrimination in statutory classifications and other governmental activity, including the programs and activities offered by District 209U.

141.  Violations of the Equal Protection Clause can be remedied under 42 U.S.C. § 1983.

142.  Swick, Spicer, Goff, Ziller, and Dennis (the "Individual Defendants") were deliberately indifferent regarding the racial harassment, threats of violence, and actual violence that CSZ was experiencing at school.

143.  The Individual Defendants were callously, recklessly, and deliberately indifferent to CSZ's safety and well-being.

144.  The Individual Defendants' conduct deprived CSZ of rights, privileges, and immunities secured by the United States Constitution, including the right under the Equal Protection Clause to not be discriminated against based on race.

145.  The Individual Defendants' actions in permitting the racial harassment and abuse suffered by CSZ deprived CSZ of equal educational opportunities.

146.  The Individual Defendants' actions were not rationally related to a legitimate governmental purpose.

147.  The Individual Defendants acted under color of state law when they committed the wrongful acts set forth above.

148.    As a result of the Individual Defendants' callous, reckless, and deliberate indifference, CSZ sustained significant damages, including pain and suffering, emotional distress, medical expenses, and moving expenses.

149.    The Individual Defendants' conduct was motivated by evil motive or intent or involved reckless or callous indifference to CSZ's federally protected rights.  CSZ is, therefore, entitled to an award of punitive damages against the Individual Defendants.

**COUNT IV**
**VIOLATION OF THE ILLINOIS CIVIL RIGHTS ACT OF 2003**
**AGAINST DISTRICT 209U**

150.    Plaintiff incorporates paragraphs 1 – 149 by reference.

151.    District 209U was callously, recklessly, and deliberately indifferent to known physical and verbal racial abuse that was severe, pervasive, and objectively offensive.  While District 209U were aware of the abuse, and had authority to end it, they failed to do so.

152.    District 209U's actions were clearly unreasonable under the circumstances.

153.    District 209U's wrongdoing was intentional and in reckless disregard District 209U's obligations to protect CSZ's rights.

154.    As a result of District 209U's wrongdoing, CSZ was deprived of access to educational opportunities and benefits provided by District 209U in violation of the Illinois Civil Rights Act of 2003, 740 ILCS 23/5 (the "Illinois Civil Rights Act").

155.    As a result of District 209U's callous, reckless, and deliberate indifference, CSZ sustained damages, including but not limited to pain and suffering, emotional distress, medical expenses, and moving expenses.

**COUNT V**
**RETALIATION UNDER THE ILLINOIS**
**CIVIL RIGHTS ACT OF 2003 AGAINST DISTRICT 209U**

156.    Plaintiff incorporates paragraphs 1 – 155 by reference.

157.    Plaintiff engaged in statutorily protected activity when they complained to District 209U and government officials about the racial harassment, threats of violence, actual violence, and fear of further threats to CSZ's safety and well-being that he experienced as a District 209U student.

158.    As a result of Plaintiff's statutorily protected activities, District 209U took adverse actions against CSZ, including disciplining and threatening to discipline him instead of the perpetrators of racial harassment; grouping him with the perpetrators of racial harassment during school-sanctioned activities, which made it even harder for CSZ to concentrate and learn; and making CSZ (rather than the school and the perpetrators) bear the burden and cost of unreasonable and ineffective remedies to the racial harassment he experienced, which further deprived him of access to educational opportunities and benefits provided by District 209U.

159.    By the actions set forth above, District 209U retaliated against CSZ because CSZ and Ms. Zirbel complained about the racial harassment and abuse CSZ was experiencing.  Had CSZ and Ms. Zirbel not engaged in protected activity, District 209U would not have taken these adverse actions.

160.    By retaliating against CSZ, District 209U made CSZ feel unwelcome as a student within District 209U.

161.    As a result of District 209U's retaliation, CSZ sustained significant damages, including pain and suffering, emotional distress, medical expenses, and moving expenses.

**COUNT VI**
**NEGLIGENT SUPERVISION AGAINST DISTRICT 209U AND SWICK,**
**SPICER, GOFF, AND DENNIS IN THEIR INDIVIDUAL CAPACITIES**

162.    CSZ incorporates paragraphs 1 – 162 by reference.

163.    Prior to racial, verbal, and physical attacks against CSZ, CSZ and Ms. Zirbel repeatedly complained to District 209U and the Individual Defendants about the racial harassment and threats of physical violence perpetrated against CSZ.

164.    Since CSZ began experiencing racially motivated harassment in the second grade, the Individual Defendants have had knowledge of the racial harassment, threats of physical violence, and actual violence perpetrated against CSZ.

165.    CSZ and Ms. Zirbel had repeatedly complained to the Individual Defendants about the racially motivated harassment, threats of physical violence, and actual violence perpetrated against CSZ while he attended school in District 209U.

166.    The Individual Defendants knew that CSZ had repeatedly been called the "n-word" by other students while at school or at school-sanctioned activities.

167.    The Individual Defendants knew that CSZ had been the target of racially harassing statements by other students while at school or at school-sanctioned activities.

168.    The Individual Defendants knew that CSZ had been the target of physical violence while at school or at school-sanctioned activities, at least once by school staff in sixth grade and at least once by another student in seventh grade.

169.    The Individual Defendants knew that CSZ had been threatened with physical violence while at school or at school-sanctioned activities.

170.    In light of this knowledge, the Individual Defendants were uniquely aware of the particular danger posed to CSZ by other students in District 209U and they owed CSZ a special duty to take reasonable measures to protect CSZ from harm from students who they knew had harmed or threatened to harm him in the past.  That duty existed during the period while CSZ

attended school in District 209U and while he experienced racially motivated harassment at school between the second through eighth grades.

171.    At all times relevant to this cause of action, the Individual Defendants had direct and immediate control over CSZ and those students who harassed and attacked him. The Individual Defendants could have provided additional supervision, contacted the students' parents, contacted law enforcement, or taken other reasonable measures to protect CSZ, such as implementing diversity and sensitivity training.

172.    The Individual Defendants' failure to take any of these measures, despite knowledge of years of racial harassment, threats of physical violence, and actual violence perpetrated against CSZ, was a direct and proximate cause of CSZ's injuries.

173.    The Individual Defendants' failure to take reasonable measures to prevent the racial, verbal, and physical abuse CSZ has suffered constituted willful and wanton negligence and a conscious disregard for the welfare of CSZ.

174.    As a result of the Individual Defendants' willful and wanton negligence, CSZ sustained damages, including but not limited to pain and suffering, severe emotional distress and trauma, medical expenses, and moving expenses.

175.    As a result of the Individual Defendants' willful and wanton conduct, CSZ is entitled to an award of punitive damages against them.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the following relief against Defendants:

a.    That the Court enter judgment in his favor against Defendants.

b.    That the Court award him compensatory damages against Defendants in an amount to be proved at trial.

c.    That the Court award him punitive damages against Defendants Matt Swick, Adam Spicer, Brian Goff, Christy Ziller, and Venita Dennis.

d.   That the Court award his attorneys' fees, expert fees, and other litigation expenses against Defendants.

e.   That the Court award his costs.

f.   That the Court grant any and all other relief that it deems just.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury for all issues so triable.


Dated:  July 11, 2019

By: */s/ Rebecca Canary-King*

| | |
|---|---|
| Adam J. Diederich | Aneel L. Chablani |
| Paul E. Greenwalt | Chicago Lawyers' Committee for Civil Rights |
| Rebecca Canary-King | 100 N. LaSalle St., Suite 600 |
| Schiff Hardin LLP | Chicago, IL 60602 |
| 233 S. Wacker Drive | (312) 202-3658 |
| Suite 7100 | achablani@clccrul.org |
| Chicago, Illinois 60606 | |
| (312) 258-5500 | Al Hofeld, Jr., Esq. |
| pgreenwalt@schiffhardin.com | 30 N. LaSalle Street |
| adiederich@schiffhardin.com | Suite 3120 |
| rcanary-king@schiffhardin.com | Chicago, Illinois 60602 |
| | (773) 241-5844 |
| Derin Kiykioglu | al@alhofeldlaw.com |
| Schiff Hardin LLP | |
| 4 Embarcadero Center | *Attorneys for Plaintiff* |
| Suite 1350 | |
| San Francisco, California 94111 | |
| (415) 901-8700 | |
| dkiykioglu@schiffhardin.com | |
| (*Pending admission pro hac vice*) | CH2\22291640.1 |